Tlie opinion of the Court was delivered by
Fenner, J.
This is a suit by two of the children and forced heirs, to annul the following will of Joshua Pearce, as containing a prohibited substitution:
*558 “ First. I give and bequeath unto my beloved wife, Sarah H. Pearce, the upper part of my plantation upon which I reside, situated on Rayon Boeuf, in the Parish of Rapides, containing one hundred acres, four acres front and twenty-five acres deep, running parallel with the plantation of W. J. S. Johnson, together with all the improvements and movables thereon, to home and to hold during her natural life.”
“Item. After her death, I give and bequeath unto my grandson, Joshua Pearee, son of William and Martha'Pearce, the above described land and improvements.”
The simplest test of the substitution prohibited by our law, is that it vests the property in one person, at the death of the donor, (in case of testaments) and, at the death of such person, vests the same property in another person, who takes the same directly from the testator, but by a title which only springs into existence on the death of the first donee. Such a disposition destroys the power of alienation of the-property by the first donee, because he is bound to hold it until his death, in order that the person then called to the title may take it. At the same time, no power of alienation exists in the second donee during the life of the first, because his title only comes into being at the death of the latter.
The practical mischiefs, which the prohibition is intended to prevent, are : that such dispositions place property out of commerce; and that they are a cause of deterioration of property and preventive of its improvement, because the possessors, conscious that they can neither profit by improvements, nor transmit them to their heirs or chosen successors, are naturally tempted to get the most out of the property with the least expense upon it. Other mischiefs are mentioned by Marcadó, 3 vol. p. 366.
It is obvious that the disposition of the will now under consideration falls within the prohibition under the above test, and entails the very mischiefs above mentioned, unless, under some possible interpretation of the language thereof, it can be held to import an immediate bequest of the naked ownership of the property to Joshua Pearce, the grandson, subject to a mere usufruct in the widow during' her life, which would bring it under the jurisdiction of C. C. 1522.
We think that under the Code Napoléon, there is no room for doubt that the provision in favor of Mrs. Pearce would be considered a mere usufruct. That Code recognizes but one kind of ownership, defined to be “ the right of enjoying and disposing of the things in the most absolute manner.” C. N. 544.
The authors agree that this definition includes, as one of the essential characteristics of ownership, that it should be, actually or potential^, perpetual. Thus, Demolombe says : “ Le droit de propriété est per *559 pétuelj et nous avons citó plus liaufc un considérant d’un arrét de la " cour de cassation, qui déclare quHl ne sanrait étre borne par le temps
* * * D’ou il faut conclure qu’nne concession d terme ne sanrait étre translative de propriété.” 1 Demolombe, distinc. desbiens, No. 546.
Hence, it is held that sale or other concession of property, for life, or for a term, not being translative of property, conveys merely an usufruct. 14 Merlin Rép. “Usufruit,” p. 362; 1 Demolombe, distinc. des Mens, No. 500.
Our Code, however, treats of ownership in a different manner. It divides it into per/eci and imperfect ownership. The perfect ownership is perpetual. “ On the contrary, ownership is imperfect, when it is to terminate at a certain time or on a condition.” C. C. 490.
Thus, the Code distinctly recognizes the right of ownership for a term; and though this ownership be imperfect, and though the rights derived therefrom be subject to certain restrictions not attached to perfect ownership, it is nevertheless a distinct right of property in the thing so held. It is, therefore, entirely distinct from an usufruct, which' is defined to be “the right of enjoying a thing, the property of xohich is vested in another.'1'’ C. C. 533.
Imperfect ownership is exclusive of any co-existing ownership of the same subject, in another, during the term of its own duration. This is of the essence of ownership, whether perfect or imperfect. C. C. 494.
The argument, therefore, that a concession for life or for a term, must be an usufruct, because it cannot be an ownership, though valid under the French law, has no force under ours. It is, as we have shown, entirely competent to convey an ownership for life.
We are then brought face to face with the question: What is the effect of the disposition of this will in favor of Mrs. Pearce ? Does it confer an ownership for life ? Or does it confer an usufruct ?
The terms are, “ I give and bequeath unto my beloved wife,” what ? The usufruct of property? No, the property. For what purpose? “To be used, enjoyed and occupied by her, during her natural life,” as in the case of the Succession of Law, 31 A. 456 ? No, “ to have and to hold during her natural life,” the technical habendum ac tenendmn, which conveyancers have used immemorially as significant of the grant of property. If these are not terms conveying an imperfect ownership for life, what terms would do so ?
Unless we should hold that every disposition by which a person gives, or sells, or otherwise conveys, property to another for life or for a term, is a constitution of an usufruct, we see not how such interpretation can be placed on this will. Yet such á> method of construction would negative the existence of that kind pf imperfect ownership *560 which is to “terminate at a certain time,” and thus to render part of C. C. 490, nugatory.
We find no words in the will suggestive, in any degree, of the constitution of the usufruct, and, still less do we find any capable of conferring any right whatever upon the grandson, prior to the death of Mrs. Pearce.
Where should we find authority to impose upon Mrs. Pearce the obligations of an usufructuary 9 How should we require her to give security, (C. C. 5589) to make necessary repairs, (571) to keep up roads, bridges, ditches, levees, etc. (578) 9 How should we be authorized to decree the absolute extinction of her right, prior to the expiration of the term fixed by the donor, on the ground of the abuse of her enjoyment of the property, (C. C. 621)9 And whence would the grandson derive the right to claim the performance of such obligations, when, under the express terms of the will, the property is only given and bequeathed to him, “ after her death 9 ”
Evidently, there is no language in the will, expressly or impliedly, imposing such obligations on Mrs. Pearce, or conferring such rights on the grandson.
We do not believe such was the intention of the testator. We believe he intended his wife should hold this property, in imperfect ownership, free from interference by anybody, during her life. It is well settled that the “ charge to preserve and return,” need not be express. It may be implied, and it is implied here.
We have carefully compared the disposition of this will, in this respect, with those held void as substitutions in the following cases, without being able to discover any distinction, in principle, between them. Provost vs. Provost, 13 A. 574; Wailes vs. Daniel, 14 A. 578; Anderson vs. Pike, 29 A. 120.
We find analagous decisions of the French Court of Cassation, holding void a disposition by which a testator bequeathed an immovable to one, with provision that, at his death, it should pass to another; and holding void another bequeathing to one with provision that, at his death, the property shall belong to another designated person. Journal du Palais, 1851, vol. 2, p. 478; Ib. 1850, vol. 1, p. 454.
In all these eases, the charge to “ preserve and return,” w'as implied.
The case of Succession of Law, 31 A. 456, rests entirely upon the use of the words qualifying the first bequest, “to be used and enjoyed and occupied by him during his natural life,” which the Court held to be, in themselves, clearly significant and descriptive of an usufruct; and, from this fact, the Court ^not without difficulty) deduced the inference that, by the phrase, “ at his death to go to ” others named, the testator *561 really meant to make these last immediate legatees of his estate, subject to the life usufruct of the husband.
There are no similar words in this testament to support such a construction of either estate.
Like considerations controlled the decision of the following cases, viz: Succession of Ducloslange, 4-Rob. 409, where the donation to the first legatee was “ pour enjouir sa vie durant;” Succession of Barker, 10 A. 28, where the legacy was of the rent of a house to one during life, and of the house to another at the death of the first; Fisk vs. Fisk, 3 A. 494, where the bequest was to A “ for his sole use and benefit during his natural life,” and at his death to others.
The case of Roy vs. Latiolas, 5 A. 552, is the only one in which a bequest for life, without words expressly tending to qualify it as an usufruct, was held to import such. That decision was rendered at Opelousas, when but three Judges were in their seats, Chief Justice Eustis being absent. Judge Preston was the organ of the Court. Judge Slidell, in assenting, expressly referred to the “ limited means he had had of examining the subject.” Judge Rost dissented.
Its authority is of the weakest kind. The opinion rests upon the grossly unscientific proposition that “there is no substantial difference between a life estate and an usufruct for life; the rights and duties of the parties are the same in each case.” Judge Rost rightly said: “ An estate for life is not an usufruct.” Obviously, there is not only a substantial difference between an estate for life, or an imperfect ownership for life, and an usufruct, but they are absolutely inconsistent with, and contradictory of, each other; and the rights and duties of the parties are entirely dissimilar, as we have already shown.
We cannot follow this decision. It .renders the decisions quoted above, simply absurd. For of what use or moment would it have been to discuss the effect of the qualifying words in those several cases, if the mere fact that the bequest was for life, was sufficent to stamp it as an usufruct, and thereby to sustain the will ?
With great respect for the ability usually displayed by the Judges who participated in that decision, we are compelled to say that the proposition on which it rests is so preposterously untenable, that we can only characterize it as an example of Homeric nodding. With all possible desire to effectuate testamentary dispositions, and to impress upon them a lawful, rather than an unlawful meaning, the language of this will and the collocation of the two bequests in separate and independent items, leave no possible doubt that the intention of the testator, clearly and unambiguously expressed, was, first, to give to his wife the ownership of this property during her life; and second, after her death to give it to his grandson.
*562 This implies, necessarily, the charge to preserve and return ; and under the imperative mandate of C. C. 1520, the disposition must be declared null.
Judgment affirmed, at appellant’s cost.